IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DENICOLE YOUNG, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) Civil Action No.: 07-cv-00983 (ESH) | |
| ) | |
| ) | |
| WILLIAM F. BURTON, ESQUIRE, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

**DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56(b) and LCvR 7, the Defendants, William F. Burton, Esquire and Lewis & Tompkins, P.C., by and through their respective and undersigned attorneys, submit this Reply Memorandum in response to the Plaintiffs' Memorandum in Opposition To Defendants' Motion For Summary Judgment to further demonstrate why they are entitled to summary judgment and, as grounds and reasons therefor, state as follows:

**SUMMARY OF OPPOSITION**

As an overview, summary judgment in favor of the Defendants is appropriate because the Plaintiffs have failed to make a sufficient showing of any material facts that would allow their claims against the Defendants to survive summary judgment. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999)(The central purpose of the summary judgment device is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial); *see also*, *Dobbs v. Roche*, 329 F. Supp. 2d 33, (D.D.C. 2004)(The non-moving party must present specific facts that would enable a reasonable jury to find in his favor). As they must, the Plaintiffs recognize and concede

that they need expert evidence to establish their claims against the Defendants and to establish a causal relationship for their alleged injuries. *See*, *Athridge v. Aetna Cas. & Sur. Co.*, 351 F.3d 1166, 1174 (D.C. Cir. 2003)(Expert evidence is required to support any non-obvious malpractice claim); *Williams v. Callaghan,* 938 F. Supp 46, 51 (1996)(plaintiff in a malpractice action must show that the defendant's actions caused a legally cognizable injury)*; Applegate v. Dobrovir, Oakes and Gebhardt*, 628 F. Supp. 378, 382 (D.D.C. 1985), *aff'd* 258 U.S. App. D.C. 89, 809 F.2d 930, *cert. denied*, 481 U.S. 1049, 95 L. Ed. 2d 837, 107 S. Ct. 2181, (1987)(In order to make out a prima facie case of legal malpractice, it is well established that expert testimony proving the applicable standard of care is an essential element of the case); *Mavity v. Fraas*, 456 F. Supp. 2d 29 (2006)(Plaintiff must have expert testimony of causal relationship where matter is beyond the ken of a jury).[1]

The Plaintiffs attempt to forestall the inevitable result of this Honorable Court's proper exclusion of the Plaintiffs' designated mold expert, Ritchie C. Shoemaker, M.D., but that attempt should be rejected. The Plaintiffs attempt to persuade this Honorable Court, by arguing, without competent and necessary evidence, that (1) Plaintiffs can establish proximate cause of their claims against the Defendants and that (2) Plaintiffs can show that the underlying claims were viable causes of action that would have been successful if filed with the Superior Court of the District of Columbia prior to the expiration of the three year statute of limitations. *See*,

---

[1] The Plaintiffs volunteer that the Defendants have only attacked causation in their motion for summary judgment and argue that "there are disputed issues of material facts as to whether Defendants' failures to properly prosecute the underlying case would be considered negligent, reckless, and/or fraudulent." By raising the undisputed arguments that the Plaintiffs cannot prove that their "cases within the cases" were meritorious, the Defendants do not concede that they will not be entitled to judgment regarding the other elements of the Plaintiffs' claims.

Plaintiffs' Memorandum in Opposition To Defendants' Motion For Summary Judgment ("Opposition") at 1. To support their specious arguments, the Plaintiffs suggest that they can rely upon the supposed testimony of two of the Defendants' experts which they have culled out of context from their 26(a)(2) reports.[2]

However, as is abundantly clear, the Plaintiffs have no true evidence, or even any evidentiary inferences, to show that their mold cases were good causes of action. *See*, affidavit of S. Michael Phillips, M.D., which is attached hereto as Exhibit 8 to support the Defendants' Motion for Summary Judgment and incorporated by reference; *see also*, affidavit of Robert F. Redmond, Jr., Esquire, which is attached hereto as Exhibit 9 to support the Defendants' Motion for Summary Judgment and incorporated by reference  The Plaintiffs' mischaracterizations of the evidence cannot to stave off the entry of summary judgment in favor of the Defendants. Thus, the Plaintiffs cannot meet their burden of showing that they have any damages since their underlying cases were not good causes of action and would have failed, particularly if they were filed in the period 2003 to 2005. *See*, *Macktal v. Garde*, 111 F. Supp. 2d 18, 21 (D.D.C. 2000); *Smith v. Haden*, 872 F. Supp. 1040, 1053 (D.D.C. 1994), *aff'd*, 314 U.S. App. D.C. 442, 69 F.3d 606 (D.C. Cir. 1995).

## ARGUMENTS

### 1. Plaintiffs Have No Evidence That Their Mold Cases Were Viable

The Plaintiffs wrongly contend that "Defendants' own experts support Plaintiffs' claims that the underlying case was viable." *See*, Opposition at 4. However, as Exhibit 8 and Exhibit 9

---

[2]Since the Plaintiffs did not depose either expert, the Plaintiffs rely upon selected and isolated quotes from the reports prepared by the experts and filed with the Defendants' Rule 26(a)(2) Disclosure Statement on December 29, 2007.

to this Reply Memorandum demonstrate, neither the testimony of Dr. Phillips nor the testimony of Mr. Redmond can supply the critical causation evidence that the Plaintiffs must have in order to prosecute their claims against the Defendants. *See*, Exhibits 8 and 9. Dr. Phillips and Mr. Redmond have both stated that they cannot testify to causation issues and that crucial factual data does not exist to allow any expert, even in the 2007-2008 time frame, to provide general or specific causation for the Plaintiffs to establish their underlying cases. Since the Plaintiffs' own medical expert and their legal expert also cannot supply this necessary expert evidence to show the viability of their mold cases, summary judgment is appropriate.

    a.    **Dr. Phillips' Testimony Cannot Supply Causation**

Dr. Phillips will not, and cannot, testify that the Plaintiffs' medical treatment and concomitant medical bills from September 6, 2002 are causally related to their thirty-four (34) day occupancy of apartment 2A of the Stanton Glenn apartment complex or, more importantly, causally related to their alleged contact with, or exposure to, toxic mold or raw sewage. Exhibit 8. As Dr. Phillips has previously testified in his original affidavit filed on March 31, 2008 (Exhibit 20 to the Defendants' Motion To Exclude Opinion Testimony of Plaintiffs' Expert, Dr. Ritchie Shoemaker) and in his additional affidavit filed on June 12, 2008 (Exhibit 22 to the Defendants' Reply in Support of the Motion To Exclude Opinion Testimony of Plaintiffs' Expert, Dr. Ritchie Shoemaker), no legitimate expert, himself included, can provide the causality evidence that the Plaintiffs require for many and varied reasons. For example, there was no evidence that 2A contained toxic mold and no evidence of the levels of those putative exposures in either apartment 2A or apartment 1A. Beyond the complication of the Plaintiffs' unauthorized visit to apartment 1A where there was mold to the causality issue, there was, and is, no medical

evidence that the Plaintiffs' complaints in September of 2002 or their subsequent medical ailments stemmed from a brief, indirect exposure to toxic mold.  There was no evidence that the Plaintiffs' complaints were not the result of pre-existing medical issues, that their complaints were not the results of other causes (such as pollen or viruses) more likely in September of 2002 than any alleged exposure or that their complaints were not the result of subsequent causes or exposures.  Dr. Phillips has repeatedly said that he cannot explain the reasons for the Plaintiffs' medical ailments.  As Dr. Phillips wrote in his report, "There is no relationship between the medical problems experienced by Denicole Young and Vanessa Ghee and putative exposures to molds or other botoxins."  *See*, Report of S. Michael Phillips, M.D., which was Exhibit J to the Defendants' Rule 26(a)(2) Disclosure Statement filed on December 29, 2007 and which was filed as Exhibit 1 to the Opposition.³  Exhibit 1 to the Opposition at page 18.  As Dr. Phillips has also opined in his three affidavits, he cannot explain the cause or causes for any of the Plaintiffs' medical ailments because of the inadequate factual foundation for any conclusions about causation.  There is no question, and no dispute, that the Plaintiffs lack proof of any causation, general or specific, from their brief stay in apartment 2A.

Nevertheless, after ignoring the totality of the report of S. Michael Phillips, M.D., the Plaintiffs select a sentence from page 18 and a sentence from page 3 of that report in order to create some support for their fallacious argument that they establish a genuine issue for trial. Exhibit 1 at 3 and 18.  In reading Exhibit 1, the Plaintiffs, however, seem to miss that Dr. Phillips offers the diagnosis of short-term irritant response as a possible explanation for some of the

---

³The Defendants have not attached Dr. Phillips' Report to their Reply Memorandum since the report is attached as Exhibit 1 to the Plaintiffs' Opposition.

Plaintiffs' medical complaints, and they ignore that he has no opinions as to the causality for those complaints, including whether those complaints stemmed from habitation in apartment 2A of building 3064 or from the unauthorized visit to apartment 1A of building 3064 or from some completely unrelated cause.  *See*, Exhibit 8 to this Reply and Exhibit 1 to the Plaintiffs' Opposition.  Dr. Phillips' hypothesis that the Plaintiffs' September of 2002 medical treatment might be supported by a diagnosis of a short-term irritant response does not create a genuine issue for trial since Dr. Phillips cannot testify as to the causation for that short-irritant response, if that is truly what the Plaintiffs experienced versus some other plausible cause.  *See*, Exhibit 8; *see also*, Exhibit 3 to the Plaintiffs' Opposition.  While it is a fact that the Plaintiffs were living in apartment 2A when they had some medical complaints for which they sought treatment in September of 2002, it does not logically follow that their living in apartment 2A is the cause of those complicated medical complaints or that their occupancy had any connection to those complaints.  The Plaintiffs' argument suffers from the same flawed logic as Dr. Shoemaker's opinions that this Honorable Court properly rejected.  Although the Plaintiffs state that "Defendants' alternative interpretation of Dr. Phillips (sic) expected testimony is a genuine issue for trial," the Plaintiffs apparently hope that this Honorable Court will disregard that Dr. Phillips has repeatedly opined that he cannot explain the causes for the conditions claimed by the Plaintiffs.  *See*, Opposition at 4.  By merely addressing only one aspect of the Plaintiffs' damage claims, the Plaintiffs seem to suggest that this Honorable Court can then reject that the Plaintiffs have claimed that they have permanent medical injuries stemming from their occupancy of apartment 2A in order to supplant the missing causal connections that they need.  The Plaintiffs have argued that all of the medical injuries and the damages that they are claiming were lost

6

because their mold cases were viable, but they cannot provide the requisite proof for their arguments even from cherry picking selective sentences out of Dr. Phillips' report for a fraction of their claimed damages. *See*, *Williams v. Patterson*, 681 A.2d 1147 (1996)(Expert medical testimony needed to prove legal malpractice). The two sentences from Dr. Phillips' report, even taken out of context by the Plaintiffs, do not create any genuine issue of material fact and do not allow the Plaintiffs to survive summary judgment. Dr. Phillips' report does not provide an evidentiary foundation for the Plaintiffs to build their case and does not cure the significant evidentiary defects in the Plaintiffs' underlying cases.

      b.      **<u>Mr. Redmond's Testimony Cannot Supply Causation</u>**

To further obfuscate the lack expert evidence as to causation, the Plaintiffs argue that they can prove the viability of the underlying cases through the testimony of the Defendants' toxic tort legal expert, Robert F. Redmond, Jr. This argument is untenable since Mr. Redmond's report concerns the complete lack of merit for the Plaintiffs' claims. It is simply false that "Mr. Redmond unequivocally attributes a set amount of medical expenses to the mold exposure." *See*, Exhibit E to the Defendants' Rule 26(a)(2) Disclosure Statement filed on December 29, 2007 and Plaintiffs' Exhibit 3 to their Opposition. As Mr. Redmond stated before rendering his opinions as to verdict and settlement values, "[I]t is my opinion that the case within a case was not a good case that would have survived a motion for judgment to be heard by a jury." Exhibit E to the Defendants' Rule 26(a)(2) Disclosure Statement filed on December 29, 2007 at 18 and Plaintiffs' Exhibit 3 to their Opposition at 18. In his report, Mr. Redmond offered his valuation opinions based upon the assumption that the Plaintiffs' "speculative claims would have been decided by a D.C. jury," which assumption he disavowed as an opinion. *Id*. Mr. Redmond will not provide

causation testimony, as his affidavit shows and as he said in his report. *See*, Exhibit 9 to this Reply Memorandum.

As to the opinions which the Plaintiffs incorrectly describe and then falsely claim provide them with valuation evidence, those opinions cannot create a jury issue. *See*, *Smith v. Haden*, 872 F. Supp. 1040, 1053 (D.D.C. 1994), *aff'd*, 314 U.S. App. D.C. 442, 69 F.3d 606 (D.C. Cir. 1995). Mr. Redmond's opinions on potential valuation cannot stand alone and must be stacked upon the medical testimony that the Plaintiffs do not have, and cannot obtain, from Dr. Phillips. Importantly, as Mr. Redmond recognized, Mr. Redmond does not have the medical expertise to solve the Plaintiffs' lack of proper expert and scientific evidence as to the nature and the causes for the Plaintiffs' claimed illnesses. Mr. Redmond's testimony, even wrongly described, does not make the Plaintiffs' bad causes of action viable and does not affect the entitlement of the Defendants to summary judgment.

## CONCLUSION

Consequently, it is undisputed that the Plaintiffs have no legally cognizable injuries since they have no evidence of causation even by distorting excerpts from the reports of the Defendants' experts. Because the Plaintiffs lost nothing by the conduct of their former attorneys and cannot meet their proximate causation burdens, summary judgment should be entered in favor of the Defendants against the Plaintiffs.

For all of the above reasons and for the reasons set forth in their Motion for Summary Judgment, the Defendants, William F. Burton, Esquire, and Defendant, Lewis & Tompkins, P.C.,

request that this Honorable Court enter summary judgment in their favor against the Plaintiffs.

Respectfully submitted,

| JORDAN, COYNE SAVITS, L.L.P. | CARR MALONEY, P.C. |
|---|---|
| By: /s/ **DEBORAH MURRELL WHELIHAN**<br>Deborah Murrell Whelihan #412454<br>1100 Connecticut Ave., N.W.<br>Suite 600<br>Washington, D.C. 20036<br>Telephone: (202) 296-4747<br>Facsimile: (202) 496-2800<br>E-mail: d.whelihan@jocs.com<br>Attorneys for Defendant William F. Burton, Esquire | By: /s/ **PAUL J. MALONEY**<br>Paul J. Maloney, Esquire #362533<br>Ali A. Beydoun, Esquire # 475413<br>1615 L Street, N.W.<br>Suite 500<br>Washington, D.C. 20006<br>Telephone: (202) 310-5500<br>Facsimile: (202) 310-5555<br>E-mail: pjm@carrmaloney.com<br>E-mail: aab@carrmaloney.com<br>Attorneys for Defendant Lewis & Tompkins, P.C. |

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of Defendants' Reply Memorandum In Support of Their Motion For Summary Judgment was sent electronically, through ECF, and mailed, postage prepaid, on this 2nd day of September, 2008, to:

> Peter C. Grenier, Esquire
> Michael K. Hibey, Esquire
> Bode & Grenier, L.L.P.
> 1150 Connecticut Avenue, N.W.
> 9th Floor
> Washington, D.C. 20036

Paul J. Maloney, Esquire
Ali A. Beydoun, Esquire
Carr Maloney, P.C.
1615 L Street, N.W.
Suite 500
Washington, D.C.  20006


       /s/ ***DEBORAH MURRELL WHELIHAN***
Deborah Murrell Whelihan

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DENICOLE YOUNG, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) Civil Action No.: 07-cv-00983 (ESH) | |
| ) | |
| ) | |
| WILLIAM F. BURTON, ESQUIRE, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

### AFFIDAVIT OF S. MICHAEL PHILLIPS, M.D.

I, S. Michael Phillips, M.D., do hereby declare under penalty of perjury, that the following statements are true and correct:

1. I have personal knowledge of the facts contained herein; I am over the age of eighteen (18) years; and I am otherwise competent to testify in this matter.

2. My qualifications as an expert in this matter are fully set forth in my report dated December 29, 2007, in my original affidavit filed on March 31, 2008 (Exhibit 20 to the Defendants' Motion To Exclude Opinion Testimony of Plaintiffs' Expert, Dr. Ritchie Shoemaker) and in my additional affidavit filed on June 12, 2008 (Exhibit 22 to the Defendants' Reply in Support of the Motion To Exclude Opinion Testimony of Plaintiffs' Expert, Dr. Ritchie Shoemaker). To summarize my qualifications as a medical expert, I am an expert in the fields of Allergy, Immunology and Epidemiology medical sciences. I am a physician licensed to practice in the states of Pennsylvania, Wisconsin, Massachusetts, and also in the District of Columbia. I have been certified by the American Board of Internal Medicine since 1974 and by the American Board of Allergy and Immunology since 1980. I am Board Certified in Internal Medicine and a

EXHIBIT 8

Fellow of the American College of Physicians. I am currently a Professor of Medicine in the Pulmonary Allergy Critical Care Division of the University of Pennsylvania School of Medicine, and a Professor of Neurology at the University of Pennsylvania School of Medicine. I am a Lead Clinical Physician at the University of Pennsylvania School of Medicine, as well as the Director of Allergy and Immunology Clinical Services at the University of Pennsylvania Presbyterian Medical Center. In addition, I am a Senior Scholar in Clinical Epidemiology at the University of Pennsylvania.

    3.    I was hired in this matter by the attorneys for the defendants in the Fall of 2007. From the attorneys for the defendants, I recently learned that the attorneys for the plaintiffs intend to rely upon my expertise and opinions to prove causation for the claims made by the plaintiffs. While I am available to testify for either side in this matter since my opinions do not depend upon who hired me, I have not been retained by the plaintiffs or had any discussions with their counsel about whether I could render opinions and testimony as to causation for the plaintiffs' medical treatment.

    4.    I am very familiar with the allegations regarding the various medical conditions which allegedly have putatively affected the plaintiffs, Denicole Young and Vanessa Ghee, in this matter, as well as their testimony from their deposition transcripts, which I reviewed. I have also reviewed the medical records for both plaintiffs that were provided in discovery and the other materials that I listed in my report dated December 29, 2007.

    5.    From the materials that I have reviewed, I am aware that the plaintiffs lived in apartment 2A of building no. 3064 from August 19, 2002 until they moved on September 23, 2002. I am aware that the Ms. Ghee and Ms. Young received treatment for respiratory

2

complaints on September 6, 2002 and September 13, 2002 from George Washington University Hospital. I am also aware that Ms. Young received additional treatment from the Unity Health Care clinic on September 24, 2002. I am aware that, sometime between September 6, 2002 and September 13, 2002, the plaintiffs spent some time within apartment 1A of building no. 3064 and that apartment 1A of building no. 3064 had mold within it to which the plaintiffs had direct exposure. All of those facts may be completely unrelated coincidences. Importantly, those facts do not provide me with sufficient evidence for me to opine, within a reasonable degree of medical certainty, as to any causal connection between the plaintiffs' medical treatment and their habitation of apartment 2A. Similarly, I cannot, within a reasonable degree of medical certainty, opine as to any nexus between the plaintiffs' unauthorized visit to apartment 1A and their medical treatment.

     6.    Thus, in this matter, I cannot offer any opinions within a reasonable degree of medical certainty regarding the causation for the plaintiffs' claimed medical conditions or regarding their September of 2002 medical treatment and bills or for their subsequent medical treatment because I do not have sufficient evidence to do so. As I stated in my prior affidavits, that is at paragraph 24 of my original affidavit and at paragraph 9 of my additional affidavit; I find that, within a reasonable degree of medical certainty, there is insufficient facts and evidence to suggest any causal relationship between specific exposures to mold and the problems experienced by the plaintiffs, Denicole Young and Vanessa Ghee. I also find that there is insufficient evidence for me to opine, within a reasonable degree of medical certainty, regarding any causal relationship between the plaintiffs' medical treatment in September of 2002 and their residence in apartment 2A of building no. 3064 of the Stanton Glenn apartment complex.

Simply stated, there is inadequate evidence for me to formulate any opinions within a reasonable degree of medical certainty as to the specific causes of the plaintiffs' complaints and the relationship of those complaints to their brief residence in apartment 2A.

7. The only causation opinion that I hold to a reasonable degree of medical certainty is that there is no concrete evidence which supports any causal relationship between the plaintiffs' multiple ailments and their exposure to apartment 2A.

8. As I wrote in my report dated December 29, 2007, I can state that one possible explanation for the plaintiffs' symptoms and concomitant medical treatment in September of 2002 might be a transient or short-term mild irritant reaction or response. To explain, a transient or short-term mild irritant reaction or response is a temporary sensitivity to some irritant, but that reaction does not result in significant illness or clinical disease. For example, a sun burn can be a transient irritant reaction to sun exposure, but it is not a disease. To be clear, I cannot, within a reasonable degree of medical certainty, opine that both of the plaintiffs had a short term mild irritant response or that even one of the plaintiffs had a short term mild irritant response in September of 2002. Although there is evidence to support a short term irritant response, that is only one of several possible explanations for the plaintiffs' symptoms or medical complaints in September of 2002, which might be completely unrelated to their having lived in apartment 2A. Therefore, I cannot, within a reasonable degree of medical certainty, even conclude that the plaintiffs suffered from short term irritant responses, as opposed to any other reasonably possible explanations, such as a cold that was transmitted from one plaintiff to another due to their living together. A transient or short-term mild irritant reaction or response would not explain Ms. Young's need for continued medical treatment after she and Ms. Ghee moved. I also cannot

conclude, with any medical certainty, that, if the plaintiffs had possible transient mild irritant reactions, those reactions were in any way connected to the fact that the plaintiffs were living in apartment 2A in September of 2002. In addition, a short term irritant response to the apartment 2A would not explain the vast majority of their subsequent medical complaints. Thus, I cannot even theorize what the causes or actual irritants would have been in September of 2002 that would have provoked the reactions in the plaintiffs if the plaintiffs had transient mild irritant responses when they were living in apartment 2A.

9. Because, as I stated in my additional affidavit at paragraph 34, there was no environmental testing of either apartment in September of 2002, I cannot, within a reasonable degree of certainty diagnose either plaintiff as having had transient mild irritant reactions due to mold exposure or due to exposure to other non-mold allergens. I cannot, within a reasonable degree of certainty, establish any connection between the cost of the plaintiffs' medical bills, including Ms. Ghee's treatment by George Washington University Hospital, and their having resided in apartment 2A in September of 2002 for thirty-four (34) days. I cannot, within a reasonable degree of certainty, opine as to any connection between the plaintiffs' unauthorized visit to apartment 1A and their need for subsequent medical treatment after that visit.

10. Consequently, I do not intend upon testifying regarding the causation between the plaintiffs' damages and their alleged exposure to either apartment 1A or 2A. I certainly do not plan upon offering opinions as to the cause, nature, and extent of the plaintiffs' medical conditions or of their claimed illnesses. Because of the insufficient evidence available to me in 2007, and, even taking the plaintiffs' claims as true, I could not, and would not as a responsible member of the medical community, provide the causation testimony that the plaintiffs would

5

apparently seek to obtain from me since such testimony would be entirely speculative and irresponsible, which I previously indicated in my criticisms of Dr. Shoemaker, as contained in my two affidavits and my report and as I testified at the *Daubert* hearing on June 16, 2008.

    I affirm and state that this Affidavit is executed on this 12 day of August, 2008.

                                                  S. Michael Phillips, M.D.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DENICOLE YOUNG, et al., )
)
    Plaintiffs, )
) Civil Action No: 07:cv-00983 (ESH)
v. )
)
WILLIAM F. BURTON, ESQUIRE, )
  et al., )
)
    Defendants. )
_____)

## AFFIDAVIT OF ROBERT F. REDMOND, JR.

I, Robert F. Redmond, Jr., do hereby declare under penalty of perjury, that the following statements are true and correct:

1. I have personal knowledge of the facts contained herein; I am over the age of eighteen (18) years; and I am otherwise competent to testify in this matter.

2. I am an attorney licensed to practice in Maryland (1986); Washington, D.C. (1989); Virginia (1991); and Texas (1993). I am a partner in the Litigation Section at Williams Mullen, and my practice focuses on products liability and toxic tort litigation, including alleged toxic mold exposure cases. I have extensive experience in products liability and toxic tort litigation. I am "AV" rated by Martindale Hubbell. I have been listed in "The Best Lawyers in America" for mass tort litigation since 2006. I was recently inducted into the International Association of Defense Counsel.

3. I was retained by the attorneys for the defendants to provide my evaluation of the plaintiffs' toxic tort cases that are the basis for the action that they filed against the defendants. My opinions are contained in the 26(a)(2)(B) Report which I prepared and which was attached as

EXHIBIT 9

Exhibit E to the Defendants' Rule 26(a)(2) Disclosure Statement filed on December 29, 2007 ("my expert report").

    4.    At the request of the attorneys for the defendants, I have reviewed plaintiffs' Memorandum in Opposition to Defendants' Motion For Summary Judgment ("Opposition") and I have reviewed the statements that the plaintiffs now intend to rely upon my expertise and opinions in order establish "evidence of the viability of the underlying case." See, Opposition at 3.

    5.    The plaintiffs' Opposition selectively quotes from my expert witness report and essentially ignores my opinions. In my expert witness report, I specifically identify six separate areas of expert witness opinion. Those areas include:

    (1)    absence of causation evidence for plaintiffs' alleged injuries;

    (2)    inadequacy of expert witness testimony;

    (3)    credibility of plaintiffs as witnesses;

    (4)    fault of plaintiffs;

    (5)    Statute of Limitations; and

    (6)    valuation of the underlying toxic tort case.

Opinions one and two reflect my opinions that the plaintiffs' case would never reach the jury because the plaintiffs could never establish general or specific causation.

    6.    As I clearly state in Section 6 of my report: "Assuming that the plaintiffs' speculative claims would have been decided by a D.C. jury (which is not my opinion) I do have an opinion on the value of the potential verdicts in the event of a successful verdict (which I think was highly unlikely)." Report at 18. I then offer my opinion that this settlement values for each case is $3,500.00 for Ms. Gee and $2,500.00 for Ms. Young. Id at 19

2

6. The plaintiffs' Opposition also does not provide the Court with my opinion, stated twice, that any minimal recovery by the plaintiffs would have been outweighed by the costs of prosecuting the claim. As I said in my report, "Because of the costs involved to prosecute toxic tort cases, it is further my opinion that the costs of prosecution of the plaintiff's case against her former landlord would have exceeded any potential recovery if the case was cognizable (which it was not because of causality problems)". *Id.* at Page 4. I then concluded that, "Because of the costs involved in prosecution of their alleged mold claims, the plaintiffs would not have received any recovery since the costs would have exceeded any potential recovery." *Id* at Page 19. I still hold the above opinions.

7. As I stated in my expert witness report, I am an attorney and not a doctor. I have no medical training. I do not intend to offer causation testimony to relate the plaintiffs' medical expenses or their claimed conditions to any alleged mold exposure from their occupancy of apartment 2A from August 19, 2002 to September 23, 2002.

8. I have not been contacted by the plaintiffs' counsel to offer expert witness testimony in this case. If I were to testify, I would testify that the plaintiffs did not have viable toxic tort claims for the reasons stated in my report. Tort cases are difficult and expensive to prosecute. Here, the costs associated with prosecuting the plaintiffs' two mold cases would overwhelm any possible recovery by these two plaintiffs.

9. I could not testify that the plaintiffs' underlying mold cases were viable for the reasons stated in my report and I do not hold those opinions, particularly since the plaintiffs now have no medical evidence to establish the necessary elements to bring their underlying cases.

3

I affirm that this Affidavit is executed on this 28 day of August, 2008.

_____
Robert F. Redmond, Jr.

1651467v1

4